IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


| | | |
|---|---|---|
| **DOREEN J. SNOOKS,** | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 09-6195-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |


**MOSMAN, J.,**

Plaintiff Doreen J. Snooks challenges the Commissioner's decision finding her not

disabled under Title II and Title XVI of the Social Security Act and denying her application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSIB"). The

Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

I review the Commissioner's decision to ensure the Commissioner applied proper legal

standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. §

405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). For the

reasons stated below, I AFFIRM the Commissioner's decision.

## PROCEDURAL BACKGROUND

On May 18, 2004, Ms. Snooks filed for DIB and SSIB under Titles II and XVI of the

Social Security Act. AR 15.[1] After the Commissioner denied these applications, an

Administrative Law Judge ("ALJ") held a hearing on December 13, 2006, and found Ms. Snooks

not disabled on March 30, 2007. AR 15-31. The Commissioner's decision became final when the

Appeals Council denied review on May 14, 2009. AR 6-8. Ms. Snooks timely appealed to this

Court.

## THE ALJ'S FINDINGS

The ALJ made his decision based upon the five-step sequential process established by the

Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); *see also* 20 C.F.R. §§ 404.1520,

416.920 (establishing the five-step evaluative process for DIB and SSI claims). The ALJ found

that Ms. Snooks has the following severe combination of impairments: fibromyalgia,

dysthymia/depression, and anxiety with panic attacks. AR 17. The ALJ determined, however,

that none of these impairments, either separately or in combination, met or equaled a disorder

listed in the Commissioner's regulations. AR 16-17.

After evaluating the record, the ALJ assessed Ms. Snooks' residual functional capacity

("RFC"):

> [C]lamaint has the residual functional capacity to occasionally and frequently
> lift and carry ten pounds. She needs to be able to change positions. She
> cannot interact appropriately with the public on a consistent basis. She cannot
> consistently perform ongoing teamwork endeavors. She cannot consistently
> maintain attention and concentration sufficient to follow detailed
> instructions.

AR 18. This RFC assessment was based on Ms. Snooks' testimony, opinions from treating,

examining, and reviewing medical professionals, and statements from Ms. Snooks' partner and

---

[1] Citations to "AR" refer to indicated pages in the official transcript of the administrative
record filed with the Commissioner's Answer on December 1, 2009 (#13).

sister. AR 19-29. Based on the testimony of a vocational expert ("VE"), the ALJ concluded that

Ms. Snooks was unable to perform past relevant work, but that her RFC enabled her to

participate in occupations that exist in significant numbers in the national economy. AR 30-31.

Because the ALJ concluded that Ms. Snooks is capable of gainful employment, the ALJ found

that she was not disabled within the meaning of the Social Security Act. AR 31.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); *Batson*, 359 F.3d at 1193. This Court must weigh "both the evidence

that supports and detracts from the ALJ's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)). The reviewing

court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253

F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the

Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also*

*Batson*, 359 F.3d at 1193.

## ANALYSIS

Ms. Snooks contends that the ALJ's decision should be reversed because the ALJ

committed legal errors in reaching his decision and the decision is not based on substantial

evidence. Specifically, Ms. Snooks argues that the ALJ erred:

1) by failing to give clear and convincing reasons for rejecting plaintiff's testimony;

2) by failing to assign adequate weight to the opinion of Dr. Whiteley, a treating

psychiatrist;

PAGE 3 - OPINION AND ORDER

3) by failing to address the opinion of Dr. Krueger, a treating psychologist;

4) by failing to thoroughly consider lay evidence; and

5) by not meeting his burden of proving that plaintiff retains the ability to perform "other work" in the national economy.

(Pl.'s Br. Supp. Compl. Review (#15) 13.) Based on the following analysis, I hold that the ALJ's decision is supported by substantial evidence in the record, and that the ALJ did not commit legal error.

## I.    Ms. Snooks' Credibility

The ALJ concluded Ms. Snooks had "several credibility issues" in light of evidence in the record. AR 29. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). In determining credibility, the ALJ may use:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 604 n.5).  When the ALJ rejects claimant's subjective statements, he must provide "specific, convincing reasons." *Id.*

Here, the ALJ considered proper factors and made specific findings to support his credibility determination. He gave little weight to Ms. Snooks' testimony because the record contained exaggerated complaints, suboptimal effort on exams, non-organic pain signs, and failure to follow through with certain recommendations. AR 29. The ALJ gave detailed explanations supporting each of these reasons.

PAGE 4 - OPINION AND ORDER

To illustrate Ms. Snooks' exaggeration of complaints, the ALJ noted that, while the record showed minimal objective findings, Ms. Snooks' complained of pain with "almost every activity and palpation." AR 20, 441. Ms. Snooks also exaggerated the level of physical activity required by her previous work. AR 440. The record does not contain objective support for Ms. Snooks' extensive complaints.

To illustrate Ms. Snooks' suboptimal efforts on exams and non-organic pain signs, the ALJ noted that in an examination with Dr. Goodwin, a neurosurgeon, the doctor noted that she "self-limits her range of motion" and "gives sub-optimal effort." AR 22, 450. Dr. Goodwin further opined that the claimant exhibited "some overlay . . . that would not seem to fit with MRI findings and would seem to exceed the MRI findings." *Id.* The ALJ also highlighted Ms. Snooks' examination with Drs. Throop and Fax, whose notes conveyed similar concerns regarding non-organic pain signs. AR 20, 439-48.

Finally, the ALJ demonstrated that Ms. Snooks failed to follow through on recommendations from doctors. Dr. Goodwin, for example, consistently expressed to Ms. Snooks that fibromyalgia "absolutely requires aerobic exercise." AR 22, 450. Ms Snooks's own testimony, however, highlights her sedentary lifestyle and the little amount of exercise she accomplishes daily. AR 435. These are but a few examples of the list of specific and convincing reasons the ALJ gave for questioning Ms. Snooks' credibility and discrediting her testimony. Therefore, the ALJ did not err in rejecting claimant's subjective testimony.

## II.    Dr. Whiteley

Ms. Snooks argues that the ALJ erred by failing to assign controlling weight to Dr. Whiteley's controverted treating physician opinion. Dr. Whiteley is a psychiatrist who worked

with Ms. Snooks starting in March 2004. AR 655. Dr. Whiteley's contribution to the record consists of his treatment notes and a December 2006 letter written in response to a request from claimant's attorney. The ALJ credited Dr. Whiteley's opinion that Wellbutrin had helped Ms. Snooks significantly with her depression, AR 24, 655, but rejected Dr. Whiteley's opinion that Ms. Snooks' mood disorder prevented her from performing any full-time, productive work. AR 26-27, 655. For the reasons set forth below, I conclude that the ALJ did not err in rejecting that portion of Dr. Whiteley's opinion.

A treating physician's opinion is given controlling weight if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)).  In order to refuse giving Dr. Whiteley's controverted opinion controlling weight, the ALJ must cite specific, legitimate reasons based on substantial evidence in the record. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "In addition, the regulations give more weight to opinions that are explained than to those that are not." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(3)).

The ALJ determined that it was "difficult to give [Dr. Whiteley's opinion] much weight." AR 27. The ALJ found that Dr. Whiteley's treatment notes provided no support for the statements in his letter. AR 27, 655. Dr. Whiteley's notes, AR 529-37, as acknowledged by both plaintiff and defendant, are quite illegible. (Pl.'s Reply Br. (#20) 2; Def.'s Br. (#19) 12.) Furthermore, the record contains no clinical study or other objective medical evidence to support the doctor's letter. Ms. Snooks, through her counsel, failed to provide medical and other evidence

needed to support Dr. Whiteley's letter. *Cf. Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (holding that the initial burden of establishing disability rests upon the claimant).

The ALJ determined, appropriately, that the illegible notes do not support the statements in the letter, and that the letter, received two years after the last notation on the claimant's file, seemed to be based on Ms. Snooks' subjective complaints. AR 27, 529-37, 655. The Ninth Circuit has held that, "disregard[ing] [a treating physician's] opinion because it was premised on [claimant's] own subjective complaints, which the ALJ had already properly discounted . . . constitutes a specific, legitimate reason for rejecting the opinion of a treating physician." *Fair*, 885 F.2d at 605; *see Tonapetyan*, 242 F.3d at 1148 (holding that the ALJ was free to disregard the opinion of a treating doctor that was premised on claimant's subjective complaints). In disregarding Dr.Whiteley's controverted opinion, the ALJ cited his determination that Dr. Whiteley's letter was likely based on Ms. Snooks' subjective complaints, complaints the ALJ determined were incredible. *See id*; 20 C.F.R. § 404.1516.  Therefore, the ALJ did not err in disregarding Dr. Whiteley's controverted opinion because he cited specific, legitimate reasons based on substantial evidence in the record.

**III.    Dr. Krueger**

Ms. Snooks initially argues that the ALJ did not address the controverted opinion of Dr. Krueger, a treating psychologist. The ALJ did, however, address the opinion of Dr. Krueger and gave this opinion weight in his assessment of claimant's depression symptoms. AR 23. Ms. Snooks appears to alternatively contest that the ALJ did not give weight to Dr. Krueger's statement that the claimant did not "have the ability to maintain concentration and focus and

sustain the effort needed to work."[2] AR 518. In order to decline giving Dr. Krueger's controverted opinion controlling weight, the ALJ must cite specific, legitimate reasons based on substantial evidence in the record. *See Andrews*, 53 F.3d at 1041.

Substantial evidence exists in the record to support the ALJ's determination to decline giving weight to this opinion, most notably within Dr. Krueger's own assessment. In her letter summarizing treatment, Dr. Krueger stated twice that she "did not do an evaluation of [Ms. Snooks'] ability to perform work duties." AR 23, 520-21. Dr. Krueger met with Ms. Snooks ten times in two months, and the ALJ gave her opinion as a treating physician sufficient weight as to her diagnosis of depression. As Dr. Krueger admitted herself, she did not evaluate the work capabilities of Ms. Snooks. Therefore, the ALJ did not err in declining to give Dr. Krueger's controverted opinion controlling weight because he provided specific, legitimate reasons based on substantial evidence in the record. *See Andrews*, 53 F.3d at 1041.

## IV.    <u>Lay Witness Testimony</u>

Ms. Snooks suggests the ALJ failed to properly evaluate statements submitted by her partner, Harold Salvatore, and her sister, Carol Gunn. Both individuals testified as to Ms. Snooks severe fatigue and limited ability to function socially. AR 28-29. The ALJ noted in detail the contents of each letter and gave weight to the lay opinions "only to the extent that it is consistent with the other evidence that claimant can function as outlined in the assessment of residual functional capacity." AR 29.

The ALJ has a duty to consider lay witness testimony. *Lewis v. Apfel*, 236 F.3d 503, 511

---

[2] This argument was made for the first time in the Plaintiff's Reply (#20).

(9th Cir. 2001); 20 C.F.R. §§ 416.913(d)(4), 416.945(a)(3).  Friends and family members in a

position to observe the claimant's symptoms and daily activities are competent to testify

regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The

value of lay witness testimony lies in their eyewitness observations, which may "often tell

whether someone is suffering or merely malingering." *Id.*  The ALJ may not reject such

testimony without comment, but he may reject lay testimony inconsistent with medical evidence.

*Lewis*, 236 F.3d at 512.  If an ALJ rejects lay witness testimony entirely, he must give reasons

germane to the witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

  The ALJ did not discredit either Mr. Salvatore or Ms. Gunn entirely, but rather he found

most of their statements unsupported by the medical record. AR 29. "An ALJ need only give

germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical

evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (internal

citation omitted). A finding that the medical evidence is inconsistent with the lay witness

testimony is an acceptable reason to reject lay witness testimony. *Lewis*, 236 F.3d at 512 (finding

that the "ALJ at least noted arguably germane reasons for dismissing the family members'

testimony, even if he did not clearly link his determination to those reasons"). AR 25. The ALJ

noted that the limited life activities observed by the lay witnesses were inconsistent with the

medical evidence. AR 29. Therefore, the ALJ did not err in rejecting the portions of the lay

witness testimony that were inconsistent with the medical evidence.

## IV. The ALJ's Step Five Finding

  Ms. Snooks finally suggests the ALJ failed to make an adequate step five finding because

the hypothetical posed to the VE did not consider the opinions of Dr. Whiteley and Dr. Krueger.

If these two physicians are credited properly, Ms. Snooks argues, the ALJ must conclude that she is unable to perform any competitive work in the national economy. Because the ALJ found Dr. Whiteley's opinion to be based on the claimant's subjective complaints, and Dr. Krueger's opinion to be limited to her diagnosis of depression, the ALJ was not required to include the other limitations in his questions to the VE. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

The ALJ must include all limitations supported by substantial evidence in his hypothetical question to the VE, but he may exclude unsupported limitations and disregard VE testimony based upon unsupported limitations. *Bayliss*, 427 F.3d at 1217; *Osenbrock,* 240 F.3d at 1164-65.  The ALJ's questions to the VE included restrictions identified in Dr. Krueger's psychology assessment, as well as others appropriately supported by the RFC assessment.  AR 700.  Because the ALJ did not find that any further limitations were supported by the record, it was not error for the ALJ to exclude the limitations highlighted by Ms. Snooks from his hypothetical question. *Osenbrock,* 240 F.3d at 1164-65; *Magallanes,* 881 F.2d at 757.

In summary, I find the record supports the ALJ's finding that Ms. Snooks' demonstrated impairments do not have a dispositive effect upon her ability to perform jobs existing in significant numbers in the national economy.  Accordingly, I find that the Commissioner's decision is based upon correct legal standards and supported by substantial evidence.

///

///

///

///

PAGE 10 - OPINION AND ORDER

**CONCLUSION**

The Commissioner's decision that Ms. Snooks does not suffer from disability and is not entitled to benefits under Title II or Title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. Therefore, the Commissioner's decision is AFFIRMED and Ms. Snooks' appeal is DISMISSED.

IT IS SO ORDERED.

Dated this  13th  day of August, 2010.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge